UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WAYNE BOLDEN,

                        Petitioner,          **No. 06-CV-6039(CJS)(VEB)**

        -vs-                                  **REPORT AND RECOMMENDATION**

THOMAS POOLE,

                        Respondent.
_____

## I.      Background

*Pro se* petitioner Wayne Bolden ("Bolden" or "petitioner") seeks a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. In the Petition (Docket No. 1) and accompanying Affidavit

(Docket No. 2), Bolden challenges the constitutionality of his state custody pursuant to a

judgment of conviction entered against him, following a jury trial in Erie County Supreme Court,

on one count of first degree burglary, New York Penal Law § 140.30(4). Bolden was sentenced

as a persistent violent felony offender to an indeterminate term of 25 years to life, and he is

currently serving his sentence.

Bolden sets forth the following arguments in support of reversing his conviction: (1) "the

defendant was denied the right to proceed pro-se [sic]"; (2) " the defendant was denied the

effective assistance of trial counsel"; (3) "the defendant was denied the right to due process, a

fair trial, and the effective assistance of counsel by the unconstitutional pay structure of the

assigned counsel program"; (4) "the defendant was denied a fair trial when the People failed to

prove the elements of the crime"; (5) denial of equal protection and due process because he was

illegally sentenced as a persistent violent felony offender; (6) the prosecutor's comments in

summation denied petitioner of his due process right to a fundamentally fair trial; (7) the

evidence was insufficient to establish that he displayed what appeared to be a firearm during the burglary; (8) his rights to due process, a fair trial, and "other constitutional protections" were violated when he was sentenced a persistent violent felony offender; (9) his rights to a fair trial and due process were violated by the trial court's use of the terms "manifest" and "manifested" during the jury instruction on the display-of-a-firearm element; (10) assigned counsel was ineffective due to his "failure to protect the record for appeal, to object and or [sic] challenge the admissibility of the photo array, failure to object to the inferential bolstering of the People's witnesses, failure to pursue or investigate the defendant's alibi, and other issues"; (11) petitioner's right of confrontation and due process right to a fair trial were violated "when the prosecution facilitated the indirect introduction of information contained in the criminal files generated by the Tonawanda Town Police" but did not turn these files over to the defense; (12) New York State's assigned counsel program was unconstitutional at the time of his conviction; (13) ineffective assistance of appellate counsel. *See* Petitioner's Affidavit ("Pet'r Aff.") at pp. 27-28.

Respondent answered the petition and did not interpose the affirmative defenses of non-exhaustion[1] or procedural default, instead arguing the lack of merit of all of Bolden's claims.

This matter was referred to the Court pursuant to 28 U.S.C. § 636(b) for the purposes of, *inter alia*, issuing a report and recommendation regarding the disposition of Bolden's petition. For the reasons that follow, the Court agrees with respondent that none of Bolden's claims have merit and accordingly recommends that Bolden's request for a writ of habeas corpus be denied

---

[1]    It appears to this Court that all of Bolden's claims have been properly exhausted for purposes of 28 U.S.C. § 2254(b)(1).

and the petition be dismissed.

## II.    General Legal Principles

Federal habeas review is available for a State prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Supreme Court has established beyond debate that mere errors of State law are not colorable grounds for Federal habeas relief.  *See*, *e.g.*, *Estelle v McGuire*, 502 U.S. 62, 67-68 (1991); *Cupp v Naughten*, 414 U.S. 141, 146 (1970).

The Court's review of habeas petitions filed pursuant to 28 U.S.C. § 2254 is governed by standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214. *E.g.*, *Brisco v. Ercole*, 565 F.3d 80, 87 (2d Cir. 2009) (citing *Messiah v. Duncan*, 435 F.3d 186, 196-98 (2d Cir.2006)). The Second Circuit has summarized the main points of the AEDPA inquiry as follows:

> Under AEDPA, a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We must presume the state court's factual findings to be correct and may overturn those findings only if the petitioner offers "clear and convincing evidence" of their incorrectness. 28 U.S.C. § 2254(e)(1).

*Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir.2006) (quoted in *Brisco*, 565 F.3d at 87).

Determinations of factual issues made by a state court must be presumed correct unless the petitioner can show by clear and convincing evidence that such presumption should not apply. *See* 28 U.S.C. § 2254(e)(1); *Leka v. Portuondo*, 257 F.3d 89, 98 (2d Cir. 2001). The

petitioner bears the ultimate burden of proving violations of his constitutional rights by a preponderance of the evidence. *See Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

## III.    Analysis of the Petition

### A.    Denial of Petitioner's Right to Proceed *Pro Se* (Ground One)

In *Faretta v. California*, 422 U.S. 806 (1975), the Supreme Court stated that the right of self-representation inheres in the text of the Sixth Amendment itself:

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to *make* his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation–to make one's own defense personally–is thus necessarily implied by the structure of the Amendment.

*Id.* at 819. The implied right to self-representation "may be exercised by all criminal defendants who knowingly, voluntarily, and unequivocally waive their right to appointed counsel." *Johnstone v. Kelly*, 808 F.2d 214, 216 (2d Cir.1986) (citing *Faretta*, 422 U.S. at 835-36). In order for a defendant to waive his Sixth Amendment right to counsel, the defendant must make a request to proceed *pro se* that is clear and unequivocal. *See Faretta*, 422 U.S. at 835 (reversing conviction where, "weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," and "[t]he record affirmatively show[ed] that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will" to proceed *pro se*); *accord Williams v. Bartlett*, 44 F.3d 95, 100 (2d Cir.1994).

If trial courts did not demand that the request to proceed *pro se* be unequivocal and

unambiguous, defendants could easily disrupt unfavorable verdicts rendered in trials where they were represented by counsel. *See United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 16 (2d Cir.1965) ("Regardless of whether he has been notified of his right to defend himself, the criminal defendant must make an unequivocal request to act as his own lawyer in order to invoke the right. If an unequivocal request were not required, convicted criminals would be given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel.") (internal and other citations omitted).

I agree with respondent that the record does not reflect an unequivocal demand by Bolden to act as his own attorney. The procedural history of this issue is as follows. In a pre-trial motion dated June 6, 2002, petitioner requested "Change of Counsel, Right [sic] Defend self C.P.L." Bolden set forth numerous complaints against defense counsel, although he used the language "[r]ight [sic] [d]efend self," he did not make an clear, unequivocal demand to do so. Prior to the commencement of trial, Bolden repeated his complaints about defense counsel and asked the trial judge to assign him a new attorney. T.2-3. However, he was noncommittal and evasive when asked if he wanted to conduct his defense on his own, without the assistance of counsel. It seems evident that what Bolden really wanted was a new lawyer because he was unhappy with his current attorney's performance.

Although Bolden had an unqualified right to represent himself if he made a knowing and unequivocal request to exercise that right in the pre-trial phase*, Maldonado*, 348 F.2d at 15, neither Bolden's written motion nor his asseverations in court showed a "purposeful choice reflecting an unequivocal intent to forego the assistance of counsel." *Williams v. Bartlett*, 44 F.3d at 100 (quoting *United States v. Tompkins*, 623 F.2d 824, 827-28 (2d Cir.1980)). Thus, the state

courts did not make an unreasonable determination of the facts in light of the evidence presented, 28 U.S.C. § 2254(d)(1), or unreasonably apply clearly established Supreme Court precedent, when they determined that petitioner's request to proceed *pro se* was equivocal and insufficient to invoke his implied Sixth Amendment right to act as his own attorney without the help of assigned counsel. Accordingly, I recommend finding that Ground One does not warrant habeas relief.

### 2. Ineffective assistance of trial counsel (Grounds Two and Ten)

#### a. Overview of petitioner's claims and the state courts' rulings

Ground Two states without elaboration that trial counsel was ineffective. *See* Petitioner's Affidavit at 27 (Docket No. 1). Under Ground Ten, Bolden alleges that assigned counsel was ineffective due to his "failure to protect the record for appeal, to object and or [sic] challenge the admissibility of the photo array, failure to object to the inferential bolstering of the People's witnesses, failure to pursue or investigate the defendant's alibi, and other issues." Petitioner's Affidavit at 28 (Docket No. 1). The "other issues" are not specified, however. Furthermore, Bolden has not provided any factual bases or legal argument regarding these claims in the Petition or Affidavit, but rather refers the Court to his state court appeal and post-verdict motion to vacate the judgment. Given his *pro se* status, the Court liberally construes his habeas pleadings as raising all the alleged errors he asserted on direct appeal and in support of his C.P.L. § 440.10 motion.

Turning to the state courts' adjudications of his ineffective assistance of counsel claims, the Appellate Division held on direct appeal that "because the record reflect[ed] a 'reasonable and legitimate strategy under the circumstances presented[,]'" *People v. Bolden*, (quoting *People*

*v. Benevento*, 91 N.Y.2d 708, 713), "defendant [Bolden] received meaningful representation[,]" *id.* (citing *Peoplev. Benevento*; *People v. Baldi*, 54 N.Y.2d 137, 147)). This constitutes an adjudication on the merits for purposes of 28 U.S.C. § 2254(d)(1).

Subsequently, Bolden challenged trial counsel's ineffectiveness in a C.P.L. § 440.10 motion seeking collateral relief. The C.P.L. § 440 court determined that "[t]he defendant is foreclosed from review of these issues because they were, or could have been, raised on direct appeal. Moreover, the court is bound by the Appellate Division's finding that defendant received effective assistance." C.P.L. § 440.10 Order Dated May 18, 2005, at p. 2 (citing N.Y. CRIM. PROC. LAW § 440.10(2)(a), (c); *People v. Cooks*, 67 N.Y.2d 100, 103 (N.Y. 2006)).

As noted above, respondent has not asserted the affirmative defense of procedural default based upon the trial court's reliance upon C.P.L. § 440.10(2)(a) and C.P.L. § 440.10(2)(c) to deny the ineffective assistance claims. Rather, respondent's argument only addresses the substantive merit of Bolden's ineffective assistance claims. Therefore, it seems clear to this Court that the affirmative defense has been waived. Accordingly, the Court turns to an analysis of the merits of Bolden's ineffectiveness claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and whether the Appellate Division's rejection of that claim was an unreasonable application of *Strickland*.

In order to establish a claim of ineffective assistance of counsel, a defendant must show that his counsel provided deficient representation when compared to prevailing professional norms of practice, and that counsel's errors caused his client to suffer prejudice. *See Strickland v. Washington*, 466 U.S. at 687-88. Prejudice requires a demonstration of a "reasonable probability" of a more favorable result. *See id.* A reviewing court may review the *Strickland* prongs in either

order, and there is no reason to consider both if a petitioner makes an inadequate showing on one. *Id.* at 697.

### b.    Analysis of the alleged errors

### 1.    Failure to consult adequately with petitioner

Bolden contends that while he was in custody defense counsel only came to see him once, in December, 2001, and did not consult with him before the *Wade*[2] hearing until several minutes prior to the start of the hearing.  "Because *Strickland* admonishes against mechanical standards for ineffectiveness, there is no set rule for the number of times counsel must meet with a defendant." *Rosario v. Bennett,* No. 01 Civ. 7142(RMB)(AJP), 2002 WL 31852827, at *29 (S.D.N.Y. Dec. 30, 2002) (citing, *inter alia*, *Wojtowicz v. United States*, 550 F.2d 786, 792 (2d Cir.) ("In evaluating claims of ineffective assistance of counsel it has long been the rule that 'time consumed in oral discussion and legal research is not the crucial test. . . . The proof of the efficiency [sic] of such assistance lies in the character of the resultant proceedings . . . .' ") (quotation omitted), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977); *United States ex rel. Testamark v. Vincent*, 496 F.2d 641, 642-43 (2d Cir.1974) (rejecting failure to consult claim where attorney conducted an initial interview, "another interview occurred on the

---

[2]    *United States v. Wade*, 388 U.S. 218 (1967). In *United States v. Wade*, 388 U.S. 218, the Supreme Court held that an evidentiary hearing was required to determine whether a witness' in-court identification of a defendant had "an independent source," apart from the witness' post-indictment identification in a line-up at which defense counsel was not present, or whether, in any event, the introduction of the evidence was harmless error. *Id.* at 236-37, 242. "The function of a *Wade* hearing is not only to test the fairness of the pretrial identification procedure in order to determine whether there may be trial testimony of the procedure itself, but also to determine whether the pretrial identification procedure was unduly suggestive–the witness has an independent basis for testifying at trial that the defendant is the perpetrator." *Goico v. Davis*, No. 04-CV-1090, 2008 WL 163594, at *4 (N.D.N.Y. Jan. 16, 2008) (citing *Wade*, 388 U.S. at 236-37, 242). As a matter of New York state law, a defendant who challenges the admissibility of a witness' identification is presumptively entitled to a *Wade* hearing even if, on a motion to suppress the allegedly impermissibly suggestive procedures, the defendant fails to assert specific facts establishing the constitutional deficiencies. *People v. Rodriguez*, 79 N.Y.2d 445, 453, 583 N.Y.S.2d 814, 593 N.E.2d 268 (N.Y. 1992); *accord ,e.g.*, *Goico*, 2008 WL 163594, at *4.

eve of trial," and petitioner "was before the court with counsel on various calendar calls and was

aware of all plea bargaining efforts."), *cert. denied*, 421 U.S. 951 (1975)). A successful

ineffective assistance claim cannot be founded on a bare allegation, such as Bolden's, that trial

counsel did not consult with petitioner long enough. *See Byas v. Keane*, No. 97 CIV. 2789(SAS),

1999 WL 608787, at *5 (S.D.N.Y. Aug. 12, 1999) ("[I]n *Strickland*, the Supreme Court

specifically indicated that it was not establishing 'mechanical rules' for counsel to stringently

follow. 466 U.S. at 669. To require a particular number of meetings between counsel and client

would establish a mechanical rule in violation of that very principle.") (citing, *inter alia*, *United*

*States ex rel. Testamark v. Vincent*, 496 F.2d 641 (2d Cir.1974) (petitioner failed to show that

attorney's infrequent visits impaired his defense); *United States v. Lohm*, 90 Cr. 301, 1993 WL

488635, at *15 (N.D.N.Y. Nov. 26, 1993)*, aff'd*, 47 F.3d 1157 (2d Cir.1995); *United States ex*

*rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir.1986) (there is no minimum number of

meetings necessary between counsel and client prior to trial to prepare the attorney to provide

effective assistance)); *accord*, *e.g.*, *Rosario v. Bennett*,  2002 WL 31852827, at *29.

Even if the Court were to accept Bolden's averments regarding counsel's lack of

communication with him, and even if *Strickland*'s "deficient performance" prong could be

established by an attorney's failure to confer with petitioner a minimum of times, habeas relief

still would not be warranted here. This is because Bolden has failed to demonstrate how trial

counsel's failure to visit negatively affected counsel's ability to defend Bolden. *Rosario v.*

*Bennett*, 2002 WL 31852827, at *29 ("Rosario's claim cannot, therefore, rest on a bare allegation

that his counsel did not consult with him long enough. Rather, Rosario has the burden of proving

that the alleged lack of communication with counsel prejudiced his defense. Rosario cannot meet

that burden.").

Here a review of the record, including the *Wade* hearing and trial transcripts,

demonstrates that "trial counsel had a firm grasp of all relevant facts, effectively cross-examining

the State's witnesses at the [suppression]  hearing and at trial," *Rosario*, 2002 WL 31852827, at

*29. Trial counsel elicited that the victim, Mrs. Bennett did not see a gun, T.85-87, and that she

had described petitioner's appearance differently on different occasions, T.89-90.  Using these

inconsistencies, trial counsel pursued a cogent defense theory that the victim had misidentified

Bolden as the perpetrator and that the prosecution had not proved that the perpetrator actually

"displayed" a firearm.  *See United States ex rel. Bradley v. McMann*, 423 F.2d 656, 657 (2d Cir.

1970) (rejecting ineffective counsel claim even though attorney "did not interview or consult

with [defendant] until the day trial was to begin" because petitioner failed to demonstrate how

the outcome of his trial would have been different if counsel had consulted with petitioner prior

to trial about the case), *cert. denied*, 400 U.S. 994 (1971).

Accordingly, I recommend dismissing this claim of ineffective assistance of trial counsel.

## 2.	Failure to "subpoena I.D. from jail" prior to the *Wade* hearing

Bolden contends, rather ambiguously, that trial counsel did not "subpoena I.D. [sic] from

the jail" for use at the *Wade* hearing.  Respondent does not hazard a guess as to what "subpoena

I.D. from the jail" means, but notes that petitioner has not established the existence of any

information useful to the defense that was not in some way elicited from witnesses at the *Wade*

hearing. After perusing Bolden's papers, it seems that by "I.D. from the jail" he is referring to

photographs taken of him at the jail when he was released three months before the Bennett

burglary. Apparently those photographs showed him to be clean-shaven. Bolden claims that these

photographs would prove what his appearance was at the time of the burglary, three months later; and that he could not be the perpetrator, who was described as having a goatee. Bolden apparently is suggesting that he could not have grown a goatee in three months time. However, there is no intimation that Bolden suffers from some disorder that impedes or prevents him from growing a beard. In sum, trial counsel cannot be found ineffective for failing to make a specious argument to the jury. This claim accordingly should be dismissed.

### 3. Failure to demand case-investigation notes made by several police officers

Observing that the Buffalo Police Department is required to complete specific forms memorializing such things as, for instance, the complainant's initial description of the alleged perpetrator, Bolden contends that reports completed by (1) Officer Calandra regarding the Bennett burglary; and (2) Lieutenant Flanagan regarding previous, unrelated criminal incidents in Tonawanda were not requested by defense counsel as part of pre-trial discovery.

Turning first to Officer Calandra, she testified, in pertinent part, that she responded to a radio call regarding a "home invasion" at 38 Fisher Street. Once she arrived, she interviewed the victim, Mrs. Bennett, and obtained a description of the perpetrator, which was broadcasted over the police radio and included in a "P1191" form. Officer Calandra subsequently filed the P1191 form pursuant to the applicable police department procedures. As noted above, Bolden claims that it was not turned over to the defense.

The trial court, in denying Bolden's C.P.L. § 440.10 motion asserting this claim, held as follows:

> The assertion that the prosecutor failed to turn over the P1191 is made solely by the defendant. The fact that Officer Calandra mentioned the report, but counsel

did not ask for it, leads the court to conclude that it had previously been turned over. Furthermore, since *neither the record nor this motion contain the Tonawanda documents or the P1191, defendant has not established a reasonable possibility that the lack of disclosure, if it occurred, contributed to the verdict.*

Erie County Supreme Court Order, Dated May 18, 2005, Denying Petitioner's C.P.L. § 440.10

Motion ("C.P.L. § 440.10 Order Dated 5/18/05 " Order) at 3 (citations omitted) (emphasis

supplied). I agree with the C.P.L. § 440.10 court that Bolden has failed to demonstrate how the

P1191 completed by Officer Calandra was material to his defense because has not shown how

the P1191 would have led, in all reasonable probability, to a more favorable verdict. In other

words, Bolden's claim fails the "prejudice" aspect of *Strickland*.

 Turning next to Detective Flanagan, the record indicates that he was *not* an investigating

officer assigned to the Bennett burglary. His involvement in this case was limited to his testifying

briefly at trial regarding his knowledge of petitioner's appearance. Detective Flanagan testified

that he was "familiar" with Bolden, as a resident of the Town of Tonawanda, on or about the day

of the Bennett burglary, and that he had observed that Bolden had a "lazy eye."[3] T.97-100. (On

cross-examination, however, trial counsel elicited that Detective Flanagan knew nothing of

Petitioner's activities on the date of the Bennett burglary. *See id.*; *see also* C.P.L. § 440.10 Order

Dated 5/18/05 " Order at 2-3.) Bolden has not cited any authority for the proposition that he was

entitled to case reports from other, totally unrelated, burglaries or criminal incidents in

Tonawanda–besides the Bennett burglary–in which Bolden had been involved and which

Detective Flanagan had investigated. This claim should fail for the same reason that the claim

---

[3]     With the condition "amblyopia", more familiarly known as "lazy eye", a person's eye may appear to drift or turn in or out, or that the eyes do not appear to work together. https://health.google.com/health/ref/Amblyopia (last accessed Nov. 22, 2010). Detective Flanagan apparently testified to the quality of Bolden's eye as a descriptive, visible condition.

regarding Detective Calandra failed–Bolden has not demonstrated, as the C.P.L. § 440.10 court

found, a "reasonable possibility that the lack of disclosure, if it occurred, contributed to the

verdict." C.P.L. § 440.10 Order Dated 5/18/05 at 3. That is, Bolden has completely failed to

show how he was prejudiced with regard to trial counsel's handling of the alleged reports from

Detective Flanagan. I therefore recommend that this claim of ineffective assistance be dismissed.

### 4. Failure to introduce the victim's statement to the police at trial

Bolden claims that trial counsel erroneously failed to introduce into evidence Mrs.

Bennett's statement to the police, which "made no reference to the perpetrator's having a 'lazy

eye'." C.P.L. § 440.10 Order Dated 5/18/05 at 3. Bolden points out that the jury, during

deliberations, requested the victim's statement. It is true that the written statement itself was not

introduced as a documentary piece of evidence. This was not an improper evidentiary ruling.

However, the substance of the victim's statement was put before the jury during trial for its

consideration: Defense counsel confronted Mrs. Bennett with her prior statement when he cross-

examined her, and questioned her about the varying descriptions of the perpetrator she provided

to the police in an attempt to impeach her credibility and show that she was not a reliable

witness. T.87-89. It is true that when the jury asked to see the statement, they were told the

statement itself, was not in evidence; however, the judge explained that the jury could have re-

read to them all of the testimony pertaining to the victim's statement. Thus, although Bolden is

correct that the victim's written statement was not made an evidentiary exhibit at trial, Bolden

overlooks the fact the jury was provided with the statement's contents. The trial court, in denying

C.P.L. § 440.10 relief on this basis, held that

> trial counsel effectively cross-examined the victim with regard to her ability to
> observe the burglar and any descriptions she had provided. Since the victim's

> police statement contained no identification information whatsoever, the absence of a reference to the perpetrator's eye condition would not have been probative.

C.P.L. § 440.10 Order Dated 5/18/05 at 3. The Court agrees with the state court's conclusion that defense counsel properly handled the issue of Mrs. Bennett's prior inconsistent statement, recommends finding that this claim does not provide a basis for finding counsel ineffective.

### e. Failure to challenge the identification evidence

Bolden alleges that trial counsel failed to challenge the photographic array as unduly suggestive and neglected to object to the prosecution's failure to call the officer who compiled the array. This claim, too, is belied by the record. Trial counsel moved for and obtained a pre-trial suppression hearing pursuant to *United States v. Wade* to challenge the constitutionality of the pre-trial identification procedure. At the *Wade* hearing, trial counsel competently questioned the victim about the circumstances under which she viewed petitioner during the burglary, in an effort to cast doubt upon her ability to accurately perceive petitioner's features. Trial counsel elicited that the victim failed to look at all the photographs in the array before she picked out petitioner's photograph. *See* Transcript of *Wade* Hearing ("*Wade* Tr.") at 22-24. At the conclusion of the hearing, trial counsel again asked the trial judge "to look at the array for suggestiveness." *Wade* Tr. at 24. The trial judge found that there was no suggestiveness inherent in the selection of photographs. *Id.* at 28.

The next claim regarding the failure to inadequately litigate the suppression issues is that trial counsel erred in failing to call the police officer who showed Mrs. Bennett the photographic array. Bolden speculates that the officer "may" have made suggestive remarks or "may" have told Mrs. Bennett that he was bringing over photographs of someone the police had "in custody". There is no suggestion that this occurred; rather, Mrs. Bennett testified that police officers who

-14-

came to her home explained that they had photographs they wanted her to look at to see if she "recognized anyone." *Wade* Tr. at 16. That was not improper. In any event, Bolden has not demonstrated how he was prejudiced by trial counsel's failure to call the police officer who created the photographic array because, in this Court's opinion, he has failed to demonstrate any possibility whatsoever that the outcome of his trial would have been different had that individual testified at the *Wade* hearing. Accordingly, the Court recommends dismissal of this claim.

f.    **Failure to object to "inferential/implicit" bolstering" by the police officers**

Bolden asserts that trial counsel erroneously failed to object to certain testimony by Lieutenant Flanagan, Detective Lyons, and Lieutenant Marracino concerning their personal knowledge of him. The purpose of Lieutenant Flanagan's testimony was to provide support for the identification testimony by Mrs. Bennett that the perpetrator had a "lazy eye"; apparently, Bolden also had a "lazy eye."  Lieutenant Flanagan provided testimony that he was a police officer from Tonawanda and that he was familiar with Bolden, who had lived in Tonawanda for some time. Lieutenant Flanagan stated that he had several case files involving Bolden. T.100. As a result, Lieutenant Flanagan was familiar with Bolden and what he looked like. He recalled that petitioner's had a "lazy eye." On cross-examination, he admitted that he had personal knowledge of petitioner's whereabouts on the night of Bennett burglary. T.99.  Bolden contends that Lieutenant Flanagan's testimony was prejudicial because it indicated to the jury that he had a prior criminal record.  However, Lieutenant Flanagan did not specify the nature of the files he had on Bolden or how he knew Bolden.

Trial counsel did object when Detective Lyons was called to the stand; however, the objection was overruled. T.101. Detective Lyons testified that he was familiar with Bolden whom

he described as having one eye "a little bombed." T.106. Detective Lyons participated in the investigation of the Bennett burglary; he had interviewed the victim and shown her the photographic array. T.102, 104. Detective Lyons testified that petitioner's name was given to him by Lieutenant Marracino who believed that Bolden was a suspect in the Bennett burglary. T.103.

Lieutenant Marracino testified that after responding to the Bennett home on the burglary call, she received a description of the perpetrator. Based upon the description, Lieutenant Marracino thought that the perpetrator might be Bolden, whom she knew. T.108-09. Accordingly, she passed along his name among to the Major Case Squad. *Id.*

None of the officers testified as to how they knew petitioner. However, Bolden contends that the foregoing testimony was "inferentially" prejudicial because the jury would infer that Bolden had a criminal record based upon the fact that several police officers were acquainted with him. That may have been the case, but does not mean that the testimony would have been excluded had trial counsel objected to it. Indeed, trial counsel did object to Detective Lyons' testimony but that objection was overruled. There is thus no reasonable probability of a different result had trial counsel objected to the other police officers' testimony. Bolden consequently cannot demonstrate that he was prejudiced by counsel's performance in regards to the testimony offered by Detective Lyons and Lieutenants Marracino and Flanagan. Therefore, the Court recommends that this claim of ineffective assistance be dismissed.

g.     **Failure to object to prejudicial testimony by the victim and failure to object to inferential bolstering by Detective Lyons, regarding the victim's identification**

Bolden contends that trial counsel should have objected to the victim's testimony (1) that

Bolden "done [sic] got fat" in jail; (2) that she viewed "mugshots" of Bolden; and (3) that her driver's license was returned by Wal-Mart after a Wal-Mart employee confiscated it from Bolden and his cohort. These alleged errors are refuted by the record. Relatedly, Bolden contends that trial counsel should have objected to "inferential bolstering" of the victim's identification testimony by Detective Lyons.

First, with regard to the comment about Bolden's having gained weight while incarcerated, trial counsel had a strategic reason for not objecting to the testimony that Bolden "got fat in jail." Trial counsel elicited this testimony on cross-examination in an effort to show the jury that Mrs. Bennett's identification was not to be trusted since she had described petitioner as thinner than he was at the time of trial. T.90.

Second, with regard to allegedly improper reference to the out-of-court identification procedure, Bennett did not testify on direct examination that the police showed her "mugshots."[4] Rather, she stated the officer brought "some pictures" over for her to look at. T.64.

Third, contrary to Bolden's contention, trial counsel did object when the prosecutor attempted to elicit testimony that Mrs. Bennet's driver's license had been retrieved from petitioner and the co-defendant. T.80. The fact that his objection was overruled was not trial counsel's fault.

---

[4] A prosecutor in New York is "ordinarily not permitted to introduce evidence of a pre-trial photographic identification at a defendant's trial[.]" *People v. Solivera*, No. 12078-2007, 2009 WL 1693730, at *2 (N.Y. Sup. Ct. 2009) (citing *People v. Lindsay*, 42 N.Y.2d 9, 12; *People v. Caserta*, 19 N.Y.2d 18, 20; *People v. Cioffi*, 1 N.Y.2d 70, 73). "This is especially true when the photographs in the array are arrest photographs, commonly referred to as "mug shots", because displaying such photographs might prejudice a jury into believing that the defendant on trial is more inclined to commit the present offense because he had been arrested for a crime in the past[.] *Id.* (citing *People v. Johnson*, 100 A.D.2d 134, 139, aff'd 63 N.Y.2d 419; *People v. Edmonson*, 75 N.Y.2d 672, 678, rearg. denied 76 N.Y.2d 846, *cert. denied*, 498 U.S. 1001[rogues gallery of mugshots likely to create inference that identified suspect has had previous trouble with the law] ).

In a related claim, Bolden also contends that trial counsel failed to object to inferential, or implicit, bolstering testimony of the victim's identification by Detective Lyons who testified that at some point after he brought photographs over to the victim's house, he arrested Bolden. *See* Petitioner's Affidavit at 24 (Docket No. 2). Bolden contends that trial counsel failed to "protect and preserve this issue for appellate review." *Id.* (Docket No. 2). Bolden is correct that "New York courts have long held that police witnesses may not 'bolster' a witness' identification of a defendant by testifying that hearsay conversations between the police and the witness led to the defendant's arrest, even if, as here, the connection between the conversation and the arrest is only 'implicit' or 'inferential.'" *Quinones v. Miller*, No. 01Civ.10752(WHP)(AJP), 2003 WL 21276429, at *48 & n.76 (S.D.N.Y. Jun. 3, 2003) (citing, *inter alia*, *People v. Holt*, 67 N.Y.2d 819, 820, 501 N.Y.S.2d 641, 642 (N.Y. 1986) ("It was also error to permit a police officer to testify, over objection, that he had arrested the defendant after conferring with the eyewitness. Although such implicit bolstering may not have warranted reversal in and of itself . . . , the testimony should be excluded upon proper objection at the retrial."); *People v. Bryan*, 179 A.D.2d 667, 668, 578 N.Y.S.2d 608, 609-10 (App. Div. 2d Dept.) ("The arresting officer testified that he charged the defendant with the robbery after the complainant gave certain responses to questions during the lineup. Although the arresting officer did not reveal any answers given by the complainant, this testimony was improperly admitted since it implicitly bolstered the complainant's testimony."), *appeal denied*, 80 N.Y.2d 829, 587 N .Y.S.2d 913 (1992)).

Bolden has a strong argument that Detective Lyons' testimony constituted "inferential bolstering" under New York state law. Nevertheless, "[a] small number of decisions have

allowed such testimony on the ground that it merely supported the 'narrative of events' leading up to the arrest." *Quinones*, 2003 WL 21276429, at *49 (citing, *e.g.*, *People v. Vanier*, 255 A.D.2d 610, 610, 680 N.Y.S.2d 877, 877-78 (App. Div. 2d Dept.1998) ("The defendant was convicted of robbing the complainant of two chains. A detective testified that after he had a conversation with the complainant, the investigation focused on the defendant. Then, the detective later testified that the defendant was arrested. The defendant now contends that this testimony constitutes impermissible bolstering, requiring reversal. Because the defendant at no time objected to this testimony, his claim is unpreserved for appellate review. . . . In any event, this testimony 'merely served as a necessary narrative of events leading to [the] defendant's arrest.'. . ."), *appeal denied*, 93 N.Y.2d 903, 689 N.Y.S.2d 715 (N.Y. 1999)).

And even when courts have found improper bolstering of this sort, they typically do not find it to be sufficient, standing alone, to warrant reversal. *See, e.g*, *People v. Lee*, 110 A.D.2d 913, 915, 488 N.Y.S.2d 738, 741 (App. Div. 2d Dept. 1985) ("In addition to these errors, one additional error, though not sufficient standing alone to require reversal, warrants discussion and should not be repeated at the defendant's second trial. During his testimony, the investigating detective was permitted to testify, over objection, that the defendant became a suspect the day after the young victim had provided a description of his assailant. Such testimony, which raised the inference that the victim had identified the defendant, was inadmissible hearsay (*see People v. Cummings*, 109 A.D.2d 748, 485 N.Y.S.2d 847 [2d Dept.]; People v. Williams, 109 A.D.2d 906, 487 N.Y.S.2d 96 [2d Dept.] ), which, in effect, was utilized to bolster the victim's identification testimony (*People v. Trowbridge*, 305 N.Y. 471, 113 N.E.2d 841))." Thus, even if Bolden's trial counsel had objected and preserved the claim for review, the Court does not

believe that there is any reasonable likelihood that the conviction would have been reversed on appeal.[5]

With regard to the effect of the trial counsel's error at the trial itself, the Court concludes that under the circumstances, trial counsel's failure to objection was not objectionably unreasonable. *See Quinones*, 2003 WL 21276429, at *49-50 (" While the issue is a close one, the Court cannot find that Morris erred by failing to object. First, Detective Milian testified that he sought out Quinones "after speaking to [the two eyewitnesses], and the other detectives." This reference to conversations with other detectives reduced the danger that the jury would connect the eyewitness conversations with the arrest. . . . Second, Morris may have reasonably chosen not to object in order to avoid highlighting the testimony, which the jury likely failed to notice (as it consisted of only a single, fleeting, reference) and which was not later emphasized in the State's summation.") (footnote omitted; citation omitted; citation to record below omitted). As discussed in note 3, *supra* in this Report and Recommendation, Bolden's case is similar to *Quinones*.

---

[5]        Bolstering is generally not a cognizable federal claim, and so a stand-alone claim based upon Detective Lyons' "inferential bolstering" would not provide a basis for habeas relief. *Quinones*, 2003 WL 21276429, at *49 n.77 (citing, *Bailey v. People of State of New York*, 01 Civ. 1179, 2001 WL 640803 at *8 (S.D.N.Y. June 8, 2001) (citations omitted); *contrasting with Mason v. Scully*, 16 F.3d 38, 42 (2d Cir.1994) (The Second Circuit held that "[a] defendant's right to confront the witnesses against him includes the right not to have the incriminating hearsay statement of a nontestifying codefendant admitted in evidence against him," and found counsel ineffective for failing to object to such testimony."). The district court in *Quinones* found although the testimony in *Mason* was "strikingly similar," *see Mason v. Scully*, 16 F.3d at 40, Quinones' case was distinguishable for two reasons. In *Quinones*, as was the case here trial, the eyewitnesses testified subject to cross-examination. Thus, both *Quinones*, and Bolden's case  lack the Sixth Amendment Confrontation Clause concerns raised in *Mason*, which involved hearsay from a non testifying codefendant. Second, the *Mason* panel expressly relied on the fact that "there was no police work that turned up [defendant], and the only lead to him obviously came from [the detective's] conversation with [co-defendant]." *Id.* at 44. However, unlike *Mason*, both *Quinones* and Bolden's case were not situations "'in which no police work turned up petitioner and the only lead to him came from [co-defendant's] conversation with [a detective],'" *Quinones*, 2003 WL 21276429, at *49 n.77 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 99 (2d Cir.1999) *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1196 (2000)). Similarly, the detectives investigating the Bennett burglary had Bolden's name suggested to them by police officer from Tonawanda who was familiar with Bolden. *See Quinones*, 2003 WL 21276429, at *49 n.77 ("Here, by contrast, Detective Milian sought out Quinones "after speaking to Ms. Scarlet, to Ms. Deans, *and the other detectives*.") (citation to record omitted; emphasis in original).

Although it perhaps would have been better practice for trial counsel to object, the Court cannot said that failure to have done so undermined adversarial process such that the verdict is constitutionally unreliable. This is because, in light of the record evidence considered *in toto*, there is no reasonable likelihood that the jury might have substituted the detective's brief testimony for that of the eyewitness, or that the error in any way contributed to the verdict. *See People v. McClain*, 176 A.D.2d 521, 522, 574 N.Y.S.2d 712, 712 (App. Div. 1st Dept. 1991) (Although "the arresting officer testified that he spoke with the victim before arresting defendant, . . . the confrontation clause is not implicated in this case as no statement by the victim was introduced at trial. Rather, the arresting officer's testimony at trial was merely that he arrested defendant after interviewing two eyewitnesses and the victim, and conducting further investigation. Furthermore, the People presented the two eyewitnesses to the shooting, who were long-term acquaintances of defendant and unequivocally identified defendant as one of the shooters, as well as corresponding spent shells recovered from the scene. Thus, even on an 'implied bolstering' theory, there is no likelihood that the jury might have substituted the officer's brief testimony for that of the eyewitnesses, or that it in any way contributed to the verdict . . . ."), *appeal denied*, 79 N.Y.2d 950, 583 N.Y.S.2d 204 (N.Y. 1992). Accordingly, the Court recommends dismissing this claim of ineffective assistance.

> **h.** **Failure to challenge constitutionality of his prior pleas which subjected him to persistent violent felony offender status**

Bolden asserts trial counsel should have challenged the constitutionality of the two predicate felonies–i.e, two counts of attempted second degree burglary to which he pleaded guilty to in 1989–on the basis that they were allegedly not "violent" felonies within in the meaning of the statute because they were not burglaries committed at night. This contention is related to

Bolden's stand-alone claim, discussed *infra*, that the trial court improperly adjudicated him as a persistent violent felony offender, under Section 70.08 of New York's Penal which Law mandates an enhanced prison sentence for defendants found to be "persistent violent felony offenders." *See* N.Y. PENAL LAW § 70.08(1)(a) (A persistent violent felony offender is defined as: "a person who stands convicted of a violent felony offense [including Attempted Burglary in the Second Degree] . . . after having previously been subjected to two or more predicate violent felony convictions.").

On direct appeal, the Appellate Division determined that his stand-alone claim pertaining the adjudication as a persistent violent felony offender based on the fact that the burglary was not committed in the nighttime was without merit as a matter of state law since "[a]t the time, nighttime commission was not a required element of burglary in the second degree " *People v. Bolden*, 12 A.D.3d at 1073 (citing *People v. Fox*, 128 A.D.2d 722, 513 N.Y.S.2d 215 (App. Div. 2d Dept. 1987) (["T]he defendant's challenge to the constitutionality of the 1981 amendment to Penal Law § 140.25(2) which abrogated the distinction between burglaries of dwellings committed during the day and those committed at night (*see*, L. 1981, ch. 361), classifying both as class "C" violent felonies, is without merit[.]"). Furthermore, the Appellate Division found, the offense of "attempted burglary in the second degree was explicitly denominated a class D violent felony." *People v. Bolden*, 12 A.D.3d at 1073 (citing N.Y. PENAL LAW (former) § 70.02(1) (b), (c)).

Bolden has not demonstrated that there was a violation of New York state law, much less a violation of his rights guaranteed by the federal constitution. Trial counsel should not  be faulted for declining to make an unmeritorious argument that petitioner's prior pleas to attempted

second degree burglary were not violent felonies, because they were not committed at night. As the Appellate Division found, at the time of petitioner's prior conviction on December 18, 1989, attempted second degree burglary under N.Y. Penal Law §§ 110 and 140.25 was a Class D violent felony offense, *see* N.Y. Penal Law § 70.02(1)(c)). As respondent notes and the Appellate Division explained, there was no requirement that the burglary occur at night in order for it to be considered a violent felony; that requirement was deleted from the statute on September 1, 1981. *See People v. Fox*, 128 A.D.2d at 722 (citing the 1981 amendment to Penal Law § 140.25(2), L. 1981, ch. 361, which abrogated the distinction between burglaries of dwellings committed during the day and those committed at night). Any argument based on the prior statutory distinction between diurnal and nocturnal burglaries was not even a colorable claim, given that repeal of that section occurred eight years *before* Bolden's 1989 conviction. Counsel cannot be faulted for failing to make clearly unmeritorious argument and, in any event, Bolden was not prejudiced, given the Appellate Division's unequivocal rejection of the merits of the underlying claim that trial counsel did not make. This claim should be dismissed.

### i. Failure to request that jury *voir dire* be transcribed

Bolden asserts that trial counsel failed to request that the *voir dire* of jury selection be recorded, "thus barring review of any potential *Batson*[6] issues." Most importantly, jury selection *was* transcribed, so this claim is factually baseless. *See* C.P.L. § 440.10 Order dated 5/18/05 at 4 ("There is no merit to defendant's claim that his attorney neglected to request that the *voir dire* of jury selection be recorded. The minutes of those proceedings have been transcribed and are on

---

[6]     *Batson v. Kentucky*, 476 U.S. 79, 86 (1986) (holding that racially-based peremptory challenges violate the equal protection clause). The Supreme Court extended *Batson* to bar gender-based discriminatory peremptory challenges in *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994).

file with the clerk.").  Furthermore, Bolden has not specified any *Batson* violations that actually

occurred. "An attorney's purported failure to pursue a meritless *Batson* claim cannot be the basis

of an ineffective assistance of counsel claim." *Williams v. Duncan*,  No. 9:03-CV-568

(LEK/RFT), 2007 WL 2177075, at *21 (N.D.N.Y. July 27, 2007) (citing *United States v.*

*Franklin*, 157 F.3d 90, 97 (2d Cir.1998) (finding that petitioner, alleging ineffective assistance of

counsel based on his attorney's waiver of *Batson* claim, was unable to meet the requirements of

*Strickland* where the challenge was meritless); *Melenciano v. Walsh*, No. 02 Civ.9593(HB), 2005

WL 768591, at *7-8 (S.D.N.Y. Apr. 6, 2005) ("[T]rial counsel's failure to pursue a meritless

*Batson* challenge cannot be the foundation for Petitioner's ineffective assistance [of] counsel

[claim].") (citation omitted in original)).

Bolden, rather, alludes generally to what he describes as the well-known discriminatory

practices utilized by the Erie County Commissioner of Jurors to produce a jury pool that under-

represents African-Americans. *See* Petitioner's Affidavit at 11 (Docket No. 2). As with his

"potential *Batson* issues," Bolden has provided no evidentiary support for this argument. This

claim should be dismissed based upon Bolden's failure to supplement his allegations with

evidentiary support; it simply is too vague to state a possible constitutional violation.

### 3. Denial of the due process right to a fair trial as a result of the assigned counsel program's pay structure set forth in County Law § 722-b  (Ground Three)

As he did in his C.P.L. § 440.10 motion, petitioner contends that he was denied a fair trial

and due process due to the pay structure of the Assigned Counsel Program, *see*  N.Y. County

Law § 722-b, which he claims affected defense counsel's performance.  In particular, Bolden

contends that the fees paid to assigned counsel were so low that his assigned attorney had no

-24-

incentive to represent him to the best of his ability. Conspicuously absent are any specific examples of what counsel would have done differently had his fee been higher. Bolden suggests that if his trial counsel had been "financially motivated" by the prospect of higher fees, he would have investigated an alleged alibi defense based upon Bolden's claim that he was shoplifting in Cheektowaga at the time of the burglary. This argument is specious. As the C.P.L. § 440.10 court found,

> [D]efendant has not alleged facts tending to demonstrate that counsel was disadvantaged because additional funds were not available. Specifically, the motion lacks evidentiary support for the existence of an alibi or the availability or efficacy of expert testimony on the issue of misidentification.

C.P.L. § 440.10 Order dated 5/18/05 at 4. Because he cannot provide specifics as to what counsel should have done differently, it would be pure speculation to conclude that there is a reasonable probability of a more favorable outcome. In other words, Bolden cannot demonstrate that he was prejudiced. Furthermore, I agree with respondent that the record demonstrates competent representation by Bolden's assigned counsel. It bears noting that counsel had negotiated a plea whereby Bolden would plead guilty to two class C violent felonies in satisfaction of two indictments and another burglary charge pending before the grand jury. In return, the trial court would commit to imposing concurrent sentences, the maximum of which was sixteen years to life, given that Bolden was a persistent violent felony offender. *Wade* Tr. at 3. This was nine years less than the maximum sentence possible after a conviction. However, Bolden declined the plea offer. *Id.*

### 4. Denial of due process as a result of legally insufficient evidence to establish petitioner's guilt beyond a reasonable doubt (Grounds Four and Seven)

In Ground Four, Bolden states that he "was denied a fair trial when the People failed to

prove the elements of the crime," burglary committed while displaying what appears to be a firearm. In Ground Seven of the petition, he asserts the evidence was insufficient to establish that he displayed what appeared to be a firearm during the burglary.

Briefly, the prosecution's proof at trial was as follows: On September 29, 2001, at about 4:50 p.m., Mrs. Bennett at her home on Fisher Street. Her invalid husband was in the bedroom; she was in the kitchen. Thinking that she heard her husband talking to someone, she went into the living room and saw a woman whom she did not know standing by the front door. The woman said that "her man" told her to stay there until he was finished, and that this was "the house." Mrs. Bennett told the woman to leave, but the woman refused. Eventually, the woman was escorted outside.

When Mrs. Bennett re-entered her home, she saw petitioner in the kitchen. Grabbing two knives, one in each hand, she demanded to know what petitioner he was doing there. Petitioner claimed, implausibly, that two little boys in the backyard had let him in and he told her to look outside if she did not believe him. Not having fallen off a turnip truck yesterday, Mrs. Bennett declined his evidentiary proffer. Petitioner then requested a glass of water, explaining that when he had been by the Bennett's house yesterday, the man who had been working on Mrs. Bennett's steps said he would leave his (petitioner's) number with her. Mrs. Bennett told petitioner to leave. Petitioner reached across the table and took her purse, warning her to "get back" or he would "shoot her." Mrs. Bennett recalled that at the time, petitioner's hand was in his pocket and it appeared as though some object, resembling a gun, was pointed at her through his pants' pocket. She did not see an actual gun, however.

After grabbing Mrs. Bennett's purse, petitioner darted through the living room with Mrs.

Bennett pursuit. Again, petitioner warned Mrs. Bennett to stay back or he would shoot her. Petitioner then fled.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *Jackson v. Virginia*, 443 U.S. 307 (1979); *see also Fiore v. White*, 531 U.S. 225 (2001). When reviewing a claim of insufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original); *accord, e.g.*, *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir.1994), *cert. denied*, 514 U.S. 1066 (1995). A defendant bears a "very heavy burden," *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir.1997), when attempting to establish an insufficiency-of-the-evidence claim: All inferences are to be drawn in the prosecution's favor, "a conviction may be based upon circumstantial evidence and inferences based upon the evidence, and the jury is exclusively responsible for determining a witness' credibility." *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir.1993) (citations omitted). The relevant inquiry is not whether this federal court sitting in habeas corpus review would find the same facts to have been proven beyond a reasonable doubt, but whether *any* reasonable fact-finder could have done so.

As an initial matter, a court reviewing an insufficiency-of-the-evidence claim "must look to state law to determine the elements of the crime." *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (quotation marks omitted). Bolden was convicted under P.L. § 140.30(4), which provides that "[a] person is guilty of burglary in the first degree when he

knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein, and

when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another

participant in the crime: . . . 4. [d]isplays what appears to be a pistol, revolver, rifle, shotgun,

machine gun or other firearm; except that in any prosecution under this subdivision, it is an

affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was

not a loaded weapon from which a shot, readily capable of producing death or other serious

physical injury, could be discharged. . . ."  N.Y. PENAL LAW § 140.30(4).

With regarding to the "display" element, the prosecution was required to prove that

Bolden consciously displayed something that could reasonably be perceived as a firearm, and that

his victims actually perceived the display. *People v. Lopez*, 73 N.Y.2d 214, 220 (N.Y. 1989).

"[T]he object displayed need not closely resemble a firearm or bear a distinctive shape. . . . [T]he

display of anything that appears to be such . . . , though held inside a coat or otherwise obscured,

is covered by [the statute]." *Id.* Thus, the "display" element has been construed broadly to require

that "the defendant, by his actions, consciously manifests the presence of an object to the victim

in such a way that the victim reasonably perceives that the defendant has a gun." *People v. Lopez*,

73 N.Y.2d at 220. *see also People v. Weatherly*, 534 N.Y.S.2d 17 (App. Div. 2d Dept. 1988)

("[T]he People did not have the burden of proving that what was displayed in the course of the

robbery was in fact a firearm.").

Under New York law, when a defendant informs the victim that he has a gun, and the

defendant has his hand in his pocket so as to give the visual  impression that he has a gun, the

proof of this element is sufficient. *E.g.*, *People v. Williams*, 286 A.D.2d 918, 918 (App. Div. 4th

Dept. 2001) (citing *People v Lopez*, 73 N.Y.2d  at 220). In *Lopez*, the New York Court of

Appeals held that "a hand consciously concealed in clothing may suffice to satisfy the display requirement 'if under all the circumstances the defendant's conduct could reasonably lead the victim to believe that a gun is being used during the robbery[.]'" *Williams*, 286 A.D.2d at 918 (quoting *Lopez*, 73 N.Y.2d at 220)). *See also  People v Middleton*, 247 A.D.2d 713 (App. Div. 3d Dept.) ("[D]efendant demanded that [the victim] give him money, moving his hand down toward the pocket of his shorts. When he completed this maneuver, [the victim] observed the top of his hand and thumb outside the pocket. Apparently because [the victim] hesitated, defendant told her to 'give it to me now or I will blow your brains out' and started counting backwards from 10. Thereafter, [the victim] gave defendant the money, explaining that she did so because she was scared and, furthermore, when defendant reached down into his pocket she assumed he had a gun and was convinced that he had a firearm in his possession when he made the threat to shoot her. . . .[T]he evidence was legally sufficient to establish that defendant displayed what appeared to be a firearm during the course of the robbery. ") (citations omitted), *lv. denied*, 92 N.Y.2d 856 (N.Y. 1998).

Mrs. Bennett, the victim, testified that Young threatened to shoot her several times. When he uttered these threats, the victim related, petitioner he had his hand in his pocket and she  could see something sticking out through his pants. Based on her observations and petitioner's threats, she believed he had a gun. *See* T.58-59, 85-87. A rational jury, crediting the prosecution's witnesses and drawing all reasonable inferences in favor of the prosecution, could easily conclude that "'the defendant, by his actions, consciously manifest[ed] the presence of an object to the victim in such a way that the victim reasonably perceive[d] that the defendant has a gun.'" *Gonzalez v. Reiner*, 177 F. Supp.2d 211, 218 (S.D.N.Y. 2001) (quoting *People v. Lopez*, 73

N.Y.2d at 220). Consequently, the prosecution fulfilled its burden of proof with regard to the "display" element, and Bolden has not demonstrated that a due process violation. *See*, *e.g.*, *Gonzalez v. Reiner*, 177 F. Supp.2d at 218. Accordingly, the Court recommends that the claims pertaining to the alleged insufficiency of the evidence be dismissed as without merit.

### 5. Denial of due process as a consequence of being adjudicated and sentenced as a persistent violent felony offender (Grounds Five and Eight)

Bolden claims that the trial court improperly adjudicated him as a persistent violent felony offender. Section 70.08 of New York's Penal Law mandates an enhanced prison sentence for defendants found to be "persistent violent felony offenders." A persistent violent felony offender is defined as: a person who stands convicted of a violent felony offense [including Attempted Burglary in the Second Degree] . . . after having previously been subjected to two or more predicate violent felony convictions. N.Y. PENAL LAW § 70.08(1)(a).

Bolden asserts that the predicate felonies–i.e, two counts of attempted second degree burglary to which he pleaded guilty to in 1989–were not "violent" felonies within in the meaning of the statute because they were not burglaries committed at night. On direct appeal, the Appellate Division determined that this claim was without merit as a matter of state law since "[a]t the time, nighttime commission was not an element of burglary in the second degree (*see People v. Fox*, 128 A.D.2d 722, 513 N.Y.S.2d 215 [(App. Div. 2d Dept. 1987) ([T]he defendant's challenge to the constitutionality of the 1981 amendment to Penal Law § 140.25(2) which abrogated the distinction between burglaries of dwellings committed during the day and those committed at night (*see*, L. 1981, ch. 361), classifying both as class "C" violent felonies, is without merit[.]")." *People v. Bolden*, 12 A.D.3d at 1073. Furthermore, the Appellate Division

found, the offense of "attempted burglary in the second degree was explicitly denominated a class D violent felony (Penal Law former § 70.02(1) (b), (c))." *Bolden*, 12 A.D.3d at 1073.

Bolden has not demonstrated that there was a violation of New York state law, much less a violation of his rights guaranteed by the federal constitution. As respondent points out, federal courts conducting habeas corpus review are precluded from examining state criminal sentencing decisions based on state law so long as those decisions do not violate the federal constitution. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also* 28 U.S.C. § 2254(a). Therefore, the Court recommends dismissing this claim based upon petitioner's failure to present a federal constitutional question.

> **6.**     **Denial of the due process right to a fundamentally fair trial as a consequence of allegedly improper remarks during the prosecutors's summation (Ground Six)**

Bolden contends that the prosecutor committed misconduct so as to deny him a fundamentally fair trial by using the term "manifest" to describe the "display" element of the burglary charge. According to Bolden, this was clearly erroneous and prejudicial because the term "manifest" is not found in the statute. On direct appeal, the Appellate Division "reject[ed] defendant's further contention that both the prosecutor and the court committed error in using the terms 'manifest' and 'manifested' in describing the element of display of a firearm (*see Lopez*, 73 N.Y.2d at 222; *People v. Moody*, 278 A.D.2d 862, 718 N.Y.S.2d 513 [(App. Div. 4th Dept. 2000)]; *see generally* CJI2d (NY) Penal Law § 140.30(4))." *People v. Bolden*, 12 A.D.3d at 1073, 784 N.Y.S.2d at 778 (some internal citations omitted). New York courts commonly use the term "manifest" when discussing the "display" requirement of burglary. *E.g.*, *People v. Lopez*, 73 N.Y.2d at 222 ("All that is required is that the defendant, by his actions, *consciously manifest* the

presence of an object to the victim in such a way that the victim reasonably perceives that the defendant has a gun. Here, the victim testified that he heard the defendant announce a 'stickup' and saw him place his hand in his vest 'as if he had a gun'. By his gesture the defendant conspicuously and consciously conveyed the impression that he was reaching for something which, under the circumstances, the victim could reasonably conclude was a firearm. Thus, in this case, the evidence was sufficient to sustain the conviction for robbery in the first degree.") (emphasis supplied). In utilizing the term "manifest", the prosecutor was simply employing language expressly condoned by the New York Court of Appeals. There was thus no error about which trial counsel could have lodged a colorable objection. Accordingly, the Court recommends dismissing Bolden's claim of prosecutorial misconduct.

### 7.    Insufficiency of the evidence (Ground Seven)

Ground Seven of the petition is duplicative of Ground Four. Accordingly, they are discussed together, *supra*, at Section III.4.

### 8.    Denial of due process in sentencing the persistent violent felony offender statute (Ground Eight)

Ground Eight of the petition essentially repeats Ground Five's allegations. Accordingly, the two claims are addressed in the same section, *supra,* Section III.5).

### 9.    Denial of due process as a consequence of the trial court's erroneous charge regarding the "display" element of the burglary offense (Ground Nine)

Bolden contends that it was improper for the trial court to use the term "manifest" to describe the "display" element of the burglary charge because that term is not used in the statute. As respondent points out, trial counsel did not object to the use of "manifest" by the trial judge and the prosecutor. On direct appeal, the Appellate Division denied the claim

on the merits: "We reject defendant's further contention that both the prosecutor and the court committed error in using the terms 'manifest' and 'manifested' in describing the element of display of a firearm (*see Lopez*, 73 N.Y.2d at 222, 538 N.Y.S.2d 788, 535 N.E.2d 1328; *People v. Moody*, 278 A.D.2d 862, 718 N.Y.S.2d 513; *see generally* CJI2d (NY) Penal Law § 140.30(4))." *People v. Bolden*, 12 A.D.3d at 1073, 784 N.Y.S.2d at 778.

Generally speaking, a state court's jury instructions are a matter of state law only, and "mere errors of state law are not the concern of" a federal court engaging in habeas review. *Dugger v. Adams*, 489 U.S. 401, 410 (1989). "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir.1985); *accord Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)).

The "display" element is shown where "the defendant, by his actions, consciously manifest the presence of an object to the victim in such a way that the victim reasonably perceives that the defendant has a gun." *People v Lopez*, 73 N.Y.2d at 222. This language from New York's highest court consistently has been cited with approval in subsequent cases. *E.g.*, *People v. Van Voorhis*, 207 A.D.2d 1023 (App. Div. 4th Dept. 1994), *lv. denied,* 84 N.Y.2d 1016; *People v Clarke*, 265 AD2d 170 (App. Div. 1st Dept. 1999), *lv. denied*, 94 N.Y.2d 821. Since the trial judge charged the jury using language from the controlling case, he conveyed the correct legal standard.

### 10.    Ineffective assistance of trial counsel (Ground Ten)

Ground Ten of the petition is duplicative of Ground Two. Accordingly, Petitioner's allegations concerning trial counsel's performance are discussed together, *supra*, at Section III.2.

> **11.  Petitioner's right to a fair trial was violated by erroneous admission of evidence of petitioner's prior bad acts and criminal conduct (Ground Eleven).**

Petitioner claims, as he did in his C.P.L. § 440.10 motion, that the prosecutor violated *People v. Ventimiglia*, 52 N.Y.2d 350 (N.Y. 1981),[7] and *People v Molineux*, 168 N.Y. 264 (N.Y. 1901), by introducing into evidence information contained in his criminal files from the Town of Tonawanda Police Department, which allegedly were not turned over to defense counsel. Bolden's claim is belied by the record. Although the prosecutor had filed an application with the trial court seeking permission to introduce evidence regarding several prior uncharged crimes involving Bolden, it had been denied. T.9. Thus, when Lt. Flanagan of the Tonawanda Police Department testified, there was no mention of any prior alleged criminal activity by Bolden in Tonawanda. *See* T.97-99. Accordingly, no such *Ventimiglia* or *Molineux* evidence was admitted which would have necessitated the disclosure of records to defense counsel. Therefore, the Court recommends dismissing this claim.

> **12.  Unconstitutionality of New York State's assigned counsel program (Ground Twelve)**

Ground Twelve of the petition is the same as Ground Five. Accordingly, Petitioner's allegations concerning the unconstitutionality of New York's assigned counsel program are

---

[7]    In a *Ventimiglia* hearing, the court determines the admissibility of evidence of prior uncharged crimes as direct evidence. *See People v. Ventimiglia*, 420 N.E.2d 59 (N.Y.1981). *Ventimiglia* hearings can also encompass *Molineux* rulings, pursuant to which evidence of uncharged crimes can be admitted in limited circumstances. *People v. Mateo*, 712 N.E.2d 692, 694-95 (N.Y. 1999) (citations omitted).

discussed together, *supra*, at Section III.5.

### 13. Ineffective assistance of appellate counsel (Ground Thirteen)

### a. Overview of claim and general legal principles

In the main, Bolden's claim that his appellate counsel provided constitutionally ineffective assistance centers on that attorney's failure to assert on appeal various errors purportedly committed by trial counsel. All of these contentions were rejected without discussion in the Appellate Division's denial of his application for a writ of error *coram nobis*. This summary ruling constitutes an "adjudication on the merits" for AEDPA purposes and, in this Court's opinion, it amounts to a correct application of federal law.

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that (i) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the appeal would have been more favorable to petitioner, i.e., the error caused prejudice to petitioner. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *Strickland v. Washington*, 466 U.S. at 688, 694 (1984). When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994), *cert. denied*, 513 U.S. 820 (1994); *accord Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000), *cert. denied*, 531 U.S. 1116 (2001). Professional judgment is demonstrated by an appellate attorney deciding to concentrate on a few key issues and bypass weaker arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *accord Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *Sellan v. Kuhlman*, 261 F.3d 303, 317 (2d Cir.2001). Appellate counsel is *not* required to advance every non-frivolous argument

urged by the petitioner.  *Id.*

b.      Analysis of appellate counsel's alleged errors

In his Affidavit in support of the Petition (Docket No. 1), Bolden lists several alleged errors by appellate counsel. The list of alleged errors, which is unsupported by any factual allegations, reads as follows:  appellate counsel (1) failed to challenge trial counsel's "total lack of preparation";  (2) failed to argue that the police officers who were not on the witness list were improperly allowed to testify regarding criminal files that were not in evidence;  (3) failed to emphasize that the victim never stated that she saw petitioner holding a firearm;  (4) failed to raise a "jury issue concerning race"; and  (5) failed to assert "other issues" mentioned in his writ of error *coram nobis* application–failure to obtain certain police documents regarding the victim's description of the perpetrator; failure assert trial counsel's ineffectiveness in not introducing the victim's statement into evidence; failure to challenge how the photographic array was assembled; failure to raise a claim concerning improper bolstering and a prejudicial reference to one police officer's knowledge of petitioner; failure to argue that trial counsel should have challenged the constitutionality of his prior pleas.

All of these alleged errors were raised as freestanding claims for habeas relief and have been discussed at length, *supra*, in this Report and Recommendation. Petitioner is attempting to get a "second bite at the apple" by raising these arguments under the guise of an ineffectiveness claim. "This is not a situation where counsel overlooked a 'sure winner' and focused only on clearly losing arguments." *Clark v. Stinson*, 214 F.3d at 328 (citing *Jackson v. Leonardo*, 162 F.3d 81, 85 (2d Cir.1998) ("In the instant case, we believe that appellate counsel's failure to raise a well-established, straightforward, and obvious double jeopardy claim constitutes ineffective

-36-

performance.")). As discussed above in this Report and Recommendation, none of the omitted claims–standing alone–have merit. The first and fifth unsupported complaints–concerning counsel's "total lack of preparation" and failure to raise a "jury issue concerning race"–are simply too vague to state a comprehensible claim for this Court to review. Bolden's arguments about trial counsel's mishandling of the *Wade* hearing and the identification testimony are baseless and indeed belied by the record. The third contention is belied by the record. Trial counsel fully and adequately cross-examined the victim at the *Wade* hearing and at trial, eliciting admissions from her that she did not see a gun during the incident, *see* T.85-87, and that she provided different descriptions of the perpetrator to the police, *see* T.89-90. In his summation, defense counsel urged the jury to find the victim an unreliable witness and emphasized that admitted to never having actually seen a firearm during the incident. *See* T.119.

It necessarily follows that appellate counsel's failure to assert all of these unmeritorious, and in some cases, frivolous, arguments on appeal could not have prejudiced Petitioner since there is no reasonable probability that they would have persuaded the appellate court to reverse or modify his conviction. Furthermore, appellate counsel exercised sound professional discretion in deciding to omit weak arguments that would detract from the stronger claims raised in the brief. Because Bolden has failed to establish that his appellate counsel's representation was outside the bounds of reasonable attorney performance, or that he was prejudiced by the errors allegedly committed by counsel, I recommend dismissing this claim.

## IV.     Conclusion

For the foregoing reasons, I recommend denying petitioner Wayne Bolden's request for a writ of habeas corpus and dismissing his petition.  In addition, I do not recommend issuance of a

certificate of appealability as Bolden has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  November 22, 2010
        Rochester, New York.

**ORDER**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1ˢᵗ Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to

petitioner and respondent.

**IT IS SO ORDERED.**

/s/ Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:      November 22, 2010
               Rochester, New York